IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Giant Eagle, Inc., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 1684 C.D. 2024 |
| | : Argued: October 8, 2025 |
| Tierra Baker (Workers' | : | |
| Compensation Appeal Board), | : | |
| | : | |
| Respondent | : | |

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION BY JUDGE WOJCIK                    FILED:  July 15, 2026

Giant Eagle, Inc. (Giant Eagle), petitions for review of the November 13, 2024 order of the Workers' Compensation Appeal Board (Board). The Board affirmed Workers' Compensation Judge (WCJ) Gallishen's decision granting Tierra Baker's (Claimant) claim petition on remand. The Board reversed WCJ Torrey's earlier decision denying the claim petition because WCJ Torrey considered Claimant to be outside the course and scope of employment when she sustained the injury relevant to this appeal. Upon careful review, we will affirm.

The relevant facts are not in dispute.[1]  Claimant, a pharmacy tech at the Giant Eagle located in Pittsburgh's Greenfield neighborhood, sustained traumatic injuries on August 12, 2021, when, during one of just two mandatory 15-minute breaks, she was struck by a vehicle while trying to cross Murray Avenue directly in front of Giant Eagle's premises.  Claimant suffered fractures in her right shoulder and left leg as a result and she subsequently filed a claim petition on August 30, 2021, seeking temporary total disability benefits.  From the start, Giant Eagle disagreed that Claimant was acting in the course and scope of her employment when she was injured and filed an answer denying the allegations set forth in the claim petition.

After bifurcating the issues relating to whether the injury occurred in the course and scope of Claimant's employment and the extent of her injuries, WCJ Torrey denied the claim petition in a decision circulated on May 26, 2022.  The WCJ observed that Giant Eagle allotted Claimant two mandatory 15-minute breaks per shift, during which she was free to leave Giant Eagle's premises.  Customarily, Claimant would punch out at the beginning of her break and punch back in when the break was over, such that "Claimant was permitted to engage in whatever activity she desired during these breaks[.]"  WCJ's Decision, 5/26/22, at Finding of Fact (F.F.) No. 11.

On the date of the incident, Claimant punched out and left the building to get lunch at a restaurant along Murray Avenue, requiring her to cross Giant Eagle's parking lot and then Murray Avenue itself where the injury occurred.  WCJ's Decision, 5/26/22, at F.F. No. 7.  Because Claimant was "on her own time, in the middle of the street, going to get lunch at the time of the accident[,]" WCJ Torrey

---

[1] *See* Stipulation of Facts Between the Parties.

reasoned that the Claimant was not furthering Giant Eagle's interest when she was injured. *Id*. at F.F. No. 11; *see also* Conclusions of Law (C.L.) No. 2 (citing *Collins v. Workmen's Compensation Appeal Board (American Society for Testing and Materials)*, 512 A.2d 1349, 1351 (Pa. Cmwlth. 1986)). Claimant filed an appeal therefrom to the Board.

In a unanimous opinion and order mailed on November 16, 2022, the Board reversed and remanded. Employing the test announced in *Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271 (Pa. Cmwlth. 1977), as well as our Supreme Court's decision in *U.S. Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 221 A.3d 171 (Pa. 2019), the Board reasoned that the location of Claimant's injuries (although in the street) was nevertheless on Giant Eagle's premises. Board's Opinion, 5/26/22, at 3-4. In the Board's view, Claimant was taking her customary route while using a reasonable ingress/egress from Giant Eagle. *Id*. at 4. Moreover, applying the personal comfort doctrine, the Board determined that "Claimant was on but a momentary departure to take care of her personal comfort, within the fifteen minutes that she was allotted. Because momentary departures as well as getting to or from the workstation are required by the nature of employment, we thus determine that Claimant was within the course of employment." *Id*. at 4-8 (citing *Henderson v. WP Ventures, Inc. (Workers' Compensation Appeal Board)*, 269 A.3d 1272, 1276 (Pa. Cmwlth. 2022); *ICT Group, Inc. v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927 (Pa. Cmwlth. 2010)).

As indicated, on remand, WCJ Gallishen granted the claim petition and awarded Claimant total disability benefits in the amount of $23,762.51 from August 13, 2021, through August 28, 2022, and partial disability benefits in the amount of

3

$31.48 for the period from August 29, 2022, through June 30, 2023. The WCJ also suspended Claimant's wage loss benefits as of July 1, 2023. WCJ's Decision, 3/19/24, at 12. The Board later affirmed, noting that Giant Eagle's appeal chiefly related to its earlier decision. The Board thus preserved the issue for our review without further discussion. *See* Board's Decision, 11/13/24, at 2-3.

Before this Court,[2] Giant Eagle asserts that the Board erred in determining that Claimant's injury occurred in the course and scope of her employment because the injury did not occur on its premises and because Claimant exceeded the bounds of the personal comfort doctrine.

Giant Eagle, on the latter point, largely argues that this case is controlled by our *en banc* decision in *Henderson*, which recognized that the personal comfort doctrine does not always apply to claimants on their lunch – especially where that break is both formal and autonomous. Giant Eagle's Brief at 34-38. In its view, when Claimant was injured, she "was not merely awaiting some reactivation of [Giant Eagle's] duties or operations, temporarily free from actual work or momentarily attending to a matter of personal comfort." *Id*. at 39.

Under the Workers' Compensation Act (Act),[3] it is the claimant's burden to prove her right to compensation by proving "all necessary elements to support an award." *Henderson*, 269 A.3d at 1272 (quoting *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993)).

---

[2] Our "review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Compensation Appeal Board (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

The Act is nevertheless remedial in nature and intended to benefit workers such that we must construe its provisions liberally to effectuate its humanitarian objectives. *Kmart Corp. v. Workers' Compensation Appeal Board (Fitzsimmons)*, 748 A.2d 660, 664 (Pa. 2000) (citations omitted). "However, we are also mindful that the Act was not intended to make the employer an insurer of its employees' lives and health." *Id*. (citing *Ginther v. J.P. Graham Transfer Co.*, 33 A.2d 923, 924 (Pa. 1943)).

Section 301(c)(1) of the Act requires a claimant's injury to have arisen "in the course of [her] employment and [be] related thereto" to warrant compensation under the same. *See* 77 P.S. §411(1). Even when the claimant sustains their injury *off* the employer's premises, the Act provides that the injury will be compensable where "the employe [was] actually engaged in the furtherance of the business or affairs of the employer . . . ." *Id*. To this end, "there is a well-established personal comfort doctrine under which an employee who sustains an injury during an inconsequential or innocent departure from work during regular working hours . . . is nonetheless considered to have sustained an injury in the furtherance of the employer's business." *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Alston)*, 900 A.2d 440, 445 (Pa. Cmwlth. 2006) (quotations omitted). Whether an employee is acting in the course of her employment at the time of her injury is a question of law which turns on the facts as found by the WCJ. *Starr Aviation v. Workers' Compensation Appeal Board (Colquitt)*, 155 A.3d 1156, 1159 (Pa. Cmwlth. 2017) (citing *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa. Cmwlth. 2013)).

Pennsylvania's personal comfort doctrine has its genesis in *Dzikowska v. Superior Steel Co.*, 103 A. 351 (Pa. 1918). Therein, our Supreme Court

5

determined that a steel mill worker who suffered fatal burns when he lit a cigarette during a lull in his work duties – loading steel into a rail car – was furthering his employer's interest at the time of the injury. *Id*.

In reaching this conclusion, the High Court observed and emphasized a lower court's recognition that the worker's injuries were sustained while awaiting further work, *i.e.*, "not a period, when by the rules of the employment, the employe was free from the duties of his employment." *Dzikowska*, 103 A. at 352. But fundamentally, *Dzikowska* is important for its adoption of the personal comfort doctrine.

> It cannot be said that the employment is broken by mere intervals of leisure such as those taken for a meal. ***If an accident happened at such a time, there would be no break in the employment***, even though the workman is paid by the hour for the time he is actually at work, ***especially where the accident occurs on the employer's premises, or about his property, unless the workman is doing something that is wholly foreign to his employment***. Acts of ministration by a servant to himself, such as quenching his thirst, ***relieving his hunger***, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade.

*Id*. (quoting 1 HONNOLD ON WORKMEN'S COMPENSATION, §111 (1917)) (emphasis added).

In the intervening century since *Dzikowska*, "[c]ases involving off-premises injuries that occur when employees engage in meal breaks have produced varying fact-bound conclusions." *Henderson*, 269 A.3d at 1277. We have, at times, discerned a "general rule" under which we consider employees to be "on their own time at lunch[,]" such that "off-premise injuries occurring during lunch time are not sustained in the course of employment for purposes of the [Act]." *Duffy v. Workmen's Compensation Appeal Board (Arco Chemical Co.)*, 664 A.2d 699, 702 (Pa. Cmwlth. 1995). For example, in *Peccon v. Francis Market*, 215 A.2d 261, 262 (Pa. Super. 1965), a claimant was denied benefits under the Act when she left her employer's premises during her lunch hour and later fell on a sidewalk. The Court opined: "In the instant case, when claimant left her employer's premises, with the express or implied consent of her employer, and selected her own place to lunch, her employment ceased and she was then engaged on a personal mission which had no relation to the business in which her employer was engaged." *Id*. at 262-63 (quotations omitted).[4]

A litany of cases followed this precedent, all involving the same basic fact pattern. That is, a claimant sustained injuries during their *lunch hour* where the claimant could have undertaken any number of activities "wholly foreign" to furthering their employer's interest thereby breaking the course of employment. *See, e.g.*, *Giebel v. Workmen's Compensation Appeal Board*, 399 A.2d 152, 153 (Pa. Cmwlth. 1979) (the claimant was not furthering her employer's interest when she was injured while shopping during her lunch hour even though she was shopping on her employer's premises); *Duffy*, 664 A.2d at 702 (the claimant was not furthering his employer's business interest during his lunch hour when he drove away from the

---

[4] *See also Rybitski v. Lebowitz*, 104 A.2d 161 (Pa. Super. 1954) (decedent's estate was denied benefits after decedent was crushed by two freight cars during a coffee break).

employer's premises to pick up jackets for the employer-sponsored intramural softball team and was involved in a car accident); *Camiolo v. Workers' Compensation Appeal Board (American Bank Notes)*, 722 A.2d 1173, 1174-76 (Pa. Cmwlth. 1999) (the claimant was not furthering his employer's interest during his lunch hour when he drove three miles away from employer's premises to cash his paycheck and was attacked by a coworker).

Just so, in *Cozza v. Workmen's Compensation Appeal Board*, 383 A.2d 1324, 1325 (Pa. Cmwlth. 1978), we determined that a claimant was not injured in the course of his employment when he broke his ankle after slipping on an icy manhole cover. At the time of the injury, the claimant was on his lunch hour and he had left his employer's premises to pick up a sandwich and then visit a nearby church. *Id*. This Court, acknowledging the Supreme Court's pronouncement in *Dzikowska*, was unpersuaded that the claimant was furthering his employer's interest by attending to his personal comforts as "the claimant [therein] performed his normal duties on the employer's premises, ***and he did more than merely take a lunch break***." *Id*. (emphasis added).[5] Likewise, in *Collins*, 512 A.2d at 1350, a claimant fell in a hole roughly two blocks from her employer's premises while returning from her luncheon trip on her regular lunch hour. The claimant argued that it was unnecessary to prove she was furthering her employer's business interest at the time of her injury because of our Supreme Court's decision in *Krawchuk v. Philadelphia Electric Co.*, 439 A.2d 627 (Pa. 1981). We, however, found *Krawchuk* inapplicable as an off-premises heart attack case. *Collins*, 512 A.2d at 1350. Citing *Peccon* and

---

[5] *But cf. Cozza*, 383 A.2d at 1326 ("That such refreshments are a necessity and, undoubtedly fit the employee for the performance of his work, cannot be denied; his leaving the premises, however, was a matter that was purely personal to him and bore no relation to the duties which he was required to perform." (quoting *Boal v. State Workmen's Insurance Fund*, 193 A. 341, 343 (Pa. Super. 1937)).

*Giebel*, among others, we determined that it remained incumbent upon the claimant to demonstrate that she was furthering her employer's interest at the time of her injury. *Collins*, 512 A.2d at 1351-52. Thus, likening the matter therein to those cases, we affirmed the Board's order denying the claimant benefits. *Id.*

Still, we have not applied this "general rule" to travelling employees. *Workmen's Compensation Appeal Board v. Borough of Plum*, 340 A.2d 637, 640-41 (Pa. Cmwlth. 1975); *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens)*, 452 A.2d 902, 903-04 (Pa. Cmwlth. 1982).[6] Nor have we applied it as to working lunches, *Pennsylvania State University v. Workers' Compensation Appeal Board (Rabin)*, 53 A.3d 126, 130-32 (Pa. Cmwlth. 2012), or coffee breaks preceding an off-site business meeting, *D'Agata National Inc. v. Workmen's Compensation Appeal Board (D'Agata)*, 479 A.2d 98, 100 (Pa. Cmwlth. 1984) ("Minor deviations for personal comfort or leisure will not break the chain of conduct in the 'course of employment' even if the employee is off the work premises."). We have likewise declined to apply this "general rule" where a claimant is injured while still on-duty and taking an informal break to get takeout from a restaurant in the same building as her employer. *U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635, 641-42 (Pa. Cmwlth. 2000).

In *Henderson*, the claimant, a custodial worker, was unable to fulfill most of his normal work duties because the facility he worked at was being cleaned and ventilated. 269 A.3d at 1274. With little else to do, the claimant opted to take an informal break to smoke a cigarette and get a sandwich from a nearby restaurant when he slipped on ice and suffered an injury. *Id.* We determined, on appeal, that

---

[6] The *Collins* Court distinguished the matter therein on this basis as well, *i.e.*, the *Collins* claimant was a stationary employee. 512 A.2d at 1351-52.

the claimant had remained in the course of his employment at the time of his injury. *Id*.

Hoping to synthesize our considerable precedent on the personal comfort doctrine, we stated:

> ***Remaining aware that this is a case-by-case inquiry and that each matter will depend on its evidence***, the foregoing cases suggest that the personal comfort doctrine may apply when the claimant's time away from the work premises is informal in nature, purely devoted to personal comfort of a physical nature, such as a cigarette break or to procure food, and brief enough that the course of employment is not broken. [*1912 Hoover House Restaurant v. Workers' Compensation Appeal Board (Soverns)*, 103 A.3d 44 (Pa. Cmwlth. 2014)] (cigarette break outside of restaurant); *Dixon*, 764 A.2d at 637 (takeout food from restaurant in building lobby); *D'Agata*, 479 A.2d at 99 (cup of coffee in adjacent mobile luncheonette). ***The doctrine may not apply, however, if the worker is on a formalized break or lunch period during which an employee is likely to enjoy a degree of autonomy, however brief, and may engage in other activities in addition to immediate personal needs***. [*Department of Labor and Industry v. Workers' Compensation Appeal Board (Savani)*, 977 A.2d 585, 586-87 (Pa. Cmwlth. 2009)] (walking during paid break period); *Collins*, 512 A.2d at 1350 (returning from assigned lunch period); *Cozza*, 383 A.2d at 1324-25 (returning from picking up a sandwich and visiting church during self-selected lunch hour).

*Henderson*, 269 A.3d at 1278 (emphasis added). Because the claimant was on an informal break and not free to engage in activities beyond his personal needs, like the ones referenced in *Dzikowska*, we concluded that he was furthering his employer's interest at the time of his injury and he was therefore entitled to compensation. *Id*. at 1279-80.

10

Here, based on the facts as found by the WCJ, Claimant was on one of only two obligatory 15-minute breaks and using that break to cross the street, procure takeout and relieve her hunger when she was injured. Per *Dzikowska*, then, Claimant's injury occurred when she was undertaking a simple "act of ministration" and is thus compensable. 103 A. at 352. Notwithstanding Giant Eagle's suggestion to the contrary, we do not read *Henderson* to bar Claimant's entitlement to compensation based solely on the formality or autonomy of her break. First, *Henderson*, 269 A.3d at 1278, acknowledged that the personal comfort doctrine warrants a case-by-case analysis. To strictly apply *Henderson*'s suggested synthesis, as Giant Eagle advocates, would be to ignore this admonition. Indeed, *Henderson*'s discussion on this point may be readily construed as a continuum between those factors which indicate a claimant remained in the course of employment at the time of their injury and those factors which indicate the claimant broke the course of employment.

As the facts of this case demonstrate, the brevity of the break afforded to Claimant diminished or tempered the autonomy that attended it. In other words, the break afforded to Claimant was so cursory that when she set out to undertake an act of ministration that act was all she had time for. The present Claimant is thus unlike the employees in *Cozza*, *Geibel* or *Duffy* who were injured while engaged in acts wholly foreign to their employment or beyond their personal needs. Based on the foregoing, we, like the Board, would place Claimant on the compensable end of that spectrum with the claimants who were attending to their personal needs like those in *Dzikowska*, *Dixon*, *Starr Aviation*[7] and *Henderson*. We are therefore

---

[7] *See Starr Aviation*, 155 A.3d at 1158 (claimant remained in the course of her employment when she was injured obtaining feminine care products from her mother).

11

satisfied that Claimant remained in the course of her employment when she sustained her injuries.[8]

Finally, we likewise view the fact that Claimant was jaywalking at the time of her injury to be immaterial to our analysis. *See, e.g.*, Giant Eagle's Reply Brief at 12. "[U]nder the [Act], contributory negligence on the part of the workman is not a defense. The employer is liable for accidents in the course of employment, except for injuries 'intentionally self-inflicted,' or caused by an act of a third person

---

[8] The Dissent charges the Majority with "turn[ing] a longstanding distinction that honors the letter and spirit of the Act into a 'continuum' lacking any true standards other than the views of the adjudicator." *Giant Eagle v. Baker (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1684 C.D. 2024, filed July 15, 2026) (Fizzano Cannon, J., dissenting), slip op. at 6. More particularly, the Dissent insists upon a strict construction of the personal comfort doctrine whereby a formal and autonomous break is always deemed to have broken the course of employment without further analysis. *See id*. at 6-7. We, respectfully, believe this charge – and reading of the personal comfort doctrine – misses the forest for the trees.

First, the distinction the Dissent insists upon now hails not from the text of the Act itself, but is apparently derived from a century-plus of precedent. This standard too, then, is one based purely on the views of adjudicators rather than any "true" standard. But further, this decision does not give license to a WCJ or the Board to render wayward decisions involving the personal comfort doctrine without adherence to precedent. We are merely affirming what we instructed in *Henderson*: when faced with a matter implicating this doctrine, reference our precedent, but analyze each case on an individual basis.

To the extent this decision offers something novel, we suppose it would be to refrain from collapsing our precedent on this subject into a single arbitrary distinction. For example, it would be error to conflate the matter before us now with cases like *Peccon* or *Collins* based solely on the formality of the break or its nominal autonomy where the brevity of the break constitutes a genuine and glaring difference. In those cases, the claimants were afforded a sufficient amount of time to undertake a "matter that was purely personal" to them, *Peccon*, 215 A.2d at 262, or to rejoin the "general public," *Collins*, 512 A.2d at 1352. But that was clearly not the case here where the break was so abbreviated that Claimant only had time to cross the street to procure the necessities of life, *i.e.*, sustenance. A failure to grapple with this difference not only ignores the object of the personal comfort doctrine, *i.e.*, ensuring workers are compensated for injuries sustained while undertaking acts of ministrations and thus furthering the employer's business, but constitutes a disservice to the Act's historical and unquestioned humanitarian purpose.

12

intended to injure the workman for reasons personal to him." *Dzikowska*, 103 A. at 352.[9]  Given our disposition, we need not express an opinion on Giant Eagle's premises liability.

Accordingly, the Board's order is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas dissents and wishes to be so noted.

---

[9] *See also The Baby's Room v. Workers' Compensation Appeal Board (Stairs)*, 860 A.2d 200, 203-06 (Pa. Cmwlth. 2004) (injury sustained while jumping up and grabbing the rim of a basketball hoop during a delivery was innocent and insufficient to break the course of employment).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giant Eagle, Inc.,     :
    :
    Petitioner    :
    :
    v.    : No. 1684 C.D. 2024
    :
Tierra Baker (Workers'     :
Compensation Appeal Board),     :
    :
    Respondent :

**O R D E R**

AND NOW, this 15th day of July, 2026, the November 13, 2024 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giant Eagle, Inc., : 
                    Petitioner : 
                     : 
        v. : 
                     : 
Tierra Baker (Workers' Compensation : 
Appeal Board), :   No. 1684 C.D. 2024
              Respondent :   Argued: October 8, 2025

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

DISSENTING OPINION
BY JUDGE FIZZANO CANNON            FILED: July 15, 2026


The Majority concludes that Claimant's injury in this case is compensable pursuant to the personal comfort doctrine. I acknowledge that the relevant analysis requires a case-by-case analysis and the salutary and remedial goals of the Workers' Compensation Act (Act).[1] However, I believe the Majority overlooks relevant and even dispositive distinctions in this area of the law. As such, I dissent.

Our precedent on the personal comfort doctrine has distinguished between injuries that occur in two contrasting circumstances when a worker leaves work premises to minister to personal needs. In the first category, benefits have been awarded where the worker has left the work premises on an *ad hoc* basis without

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

"clocking out," whether actually or informally. In that context, we have concluded that there is no break in the course of employment and that the worker's personal ministrations can been viewed as furthering the employer's interests. Most recently, in *Henderson v. WP Ventures, Inc. (Workers' Compensation Appeal Board)*, 269 A.3d 1272, 1274 (Pa. Cmwlth. 2022), the employer's policy was that workers should get permission to take breaks for cigarettes or food, except on a limited basis where no supervisor was present at the moment. In effect, this is the essence of the personal comfort doctrine going back to *Dzikowska v. Superior Steel Co.*, 103 A. 351 (Pa. 1918), which was issued just three years after the Act became effective. There, our Supreme Court upheld benefits to the widow and children of a worker who was killed when he left his job area for a cigarette break while still on the clock. *Id*. at 352.

By contrast, benefits have generally been denied when the worker is on a formally recognized or mandated break in employment, whether or not the worker has technically "clocked out." In the past, these cases have often focused on "lunch hour" situations, as in *Peccon v. Francis Market*, 215 A.2d 261 (Pa. Super. 1965), where the worker fell on a sidewalk while walking to a restaurant during her "daily lunch period of one hour" and benefits were denied. *Id*. at 262. I quote *Peccon* at length because it shares significant similarities with the facts in this matter, where Claimant was on one of her two mandated 15-minute breaks, during which she punched out and was at liberty to do what she wanted; she stepped into the roadway outside Employer's retail premises to get food across the street when a car hit her. In *Peccon*,

> when [the] claimant left her employer's premises, with the express or implied consent of her employer, and selected her own place to lunch, her employment ceased and she was then engaged on a personal mission which had no

relation to the business in which her employer was engaged. From the time of her departure until her return to her place of employment, she was not "in the course of her employment" as contemplated by the [Act]. Her status was not affected whether she selected her own lunch hour or whether she had a fixed time for lunch. Her leaving the premises was a matter that was purely personal to her and bore no relation to the duties which she was required to perform. [Her] hours of employment included a lunch period for which she was not paid, and it is clear that during such lunch period if off the employer's premises she was not engaged in the furtherance of her employer's business. Being off the premises and on her way to lunch at the time of her injury, [her] mission was not necessary or required in the course of her employment and the employer is not liable for compensation.

*Id*. at 262-63. The distinction between compensable injuries that occur during a personal comfort break in the course of employment and those that are not compensable because they occur when the worker is on their own free time during the work period is not newly contrived, but dates back to the early days of workers' compensation. In awarding benefits in *Dzikowska*, our Supreme Court noted the difference:

This was not a rest period. It was not a period when, by the rules of the employment, the employé was free from the duties of his employment. It was an indeterminate period of waiting for the occurrence of an event which would renew the active operations of the employment. That might be a minute, or it might be very much more. But the employé had not been called off from work, and, in renewing his work, would not be called back. He was there ready to work as soon as the material was ready for his hand.

103 A. at 352. In *Henderson*, this Court analyzed multiple cases and concluded that the distinction has remained vital:

Remaining aware that this is a case-by-case inquiry and that each matter will depend on its evidence, the foregoing cases suggest that the personal comfort doctrine may apply when the claimant's time away from the work premises is informal in nature, purely devoted to personal comfort of a physical nature, such as a cigarette break or to procure food, and brief enough that the course of employment is not broken. *1912 Hoover House Rest. v. Workers' Comp. Appeal Bd. (Soverns)*, 103 A.3d 441, 444 (Pa. Cmwlth. 2014) (cigarette break outside of restaurant); *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 637 (Pa. Cmwlth. 2000) (takeout food from restaurant in building lobby); *D'Agata Nat'l Inc. v. Workmen's Comp. Appeal Bd.*, 479 A.2d 98, 99 (Pa. Cmwlth. 1984) (cup of coffee in adjacent mobile luncheonette). The doctrine may not apply, however, if the worker is on a formalized break or lunch period during which an employee is likely to enjoy a degree of autonomy, however brief, and may engage in other activities in addition to immediate personal needs. *Dep't of Lab. & Indus. v. Workers' Comp. Appeal Bd. (Savani)*, 977 A.2d 585, 586-87 (Pa. Cmwlth. 2009) (walking during paid break period); *Collins v. Workmen's Comp. Appeal Bd. (Am. Soc'y for Testing & Materials)*, 512 A.2d 1349, 1350 (Pa. Cmwlth. 1986) (returning from assigned lunch period); *Cozza v. Workmen's Comp. Appeal Bd.*, 383 A.2d 1324, 1324-25 (Pa. Cmwlth. 1978) (returning from picking up a sandwich and visiting church during self-selected lunch hour).

269 A.3d at 1278 (providing full citations of cited cases).

That the quoted language from *Henderson* allows for some flexibility, such as the use of "may apply" and "may not apply," does not negate the consistency of the distinction between compensable injuries occurring during informal breaks and non-compensable injuries occurring when the worker has formally left the course of employment and "is likely to enjoy a degree of autonomy, however brief, and may engage in other activities in addition to immediate personal needs." *Henderson*, 269 A.3d at 1278. Some other theory or factual circumstance in a given

case could change the outcome. For example, an employee on an *ad hoc* break and still "on the clock" when injured could nevertheless be denied benefits if the break was taken in defiance of a direct order from the employer. *See Lewis v. Workers' Comp. Appeal Bd. (Andy Frain Servs., Inc.)*, 29 A.3d 851, 863 n.9 (Pa. Cmwlth. 2011) (stating that an employer "may raise the affirmative defense to a claim petition that the claimant's actions violated a positive work order and, as a result, his injuries were sustained outside the course of his employment"). Similarly, if an employee on an informal break is injured in the course of committing a crime, benefits could be denied. *See Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 908 (Pa. 2002) (stating that a "violation of law" as contemplated by Section 301(a) of the Act, 77 P.S. § 431, "removes an employee from the course of employment if the employee is injured while committing the offense").[2]

However, no such variation is present here. The sole question is whether Claimant, who was injured while on a formally mandated and unpaid break, remained in the course of employment so as to render her injury compensable. The Majority recognizes the longstanding distinction set forth above. Majority Op. at 6-10. However, the Majority then discards the distinction, concluding instead that because these cases are fact-specific and require a case-by-case analysis, "*Henderson*'s discussion on this point may readily be construed as a continuum

---

[2] This case includes some discussion of the fact that Claimant was jaywalking when she was injured because she did not go to the nearest intersection to cross the street to get her food. The Majority deems this aspect of the facts "immaterial," characterizing it as a form of "contributory negligence" that does not defeat compensability. Majority Op. at 12 & n.8. I also find Claimant's jaywalking "immaterial" here but for a different reason. *See Wright v. Workers' Comp. Appeal Bd. (Larpat Muffler, Inc.)*, 871 A.2d 281, 283 n.2 (Pa. Cmwlth. 2005) (noting Board determination that jaywalking did not constitute a violation of law sufficient to serve as an affirmative defense because the claimant was not convicted of jaywalking and because jaywalking is a summary offense that is not a necessary element of a misdemeanor or felony, as required for the defense to be viable).

between those factors which indicate a claimant remained in the course of employment at the time of their injury and those factors which indicate the claimant broke the course of employment."[3]  *Id*. at 11.  In that light, the Majority concludes that because Claimant's break was only 15 minutes long, its "brevity . . . diminished or tempered the autonomy that attended it" and placed Claimant "on the compensable end of that spectrum[.]"  *Id*.

I disagree.  Nothing in our cases going back over 100 years to *Dzikowska* suggests that the length of time of an assigned and unpaid break matters more than, or changes, the fact that a worker who is off work premises and on that type of break has left the course of employment.  To the contrary, decades of case law reflect that during that period of time, however brief, the worker becomes "a member of the general public" enjoying a "rest period . . . when, by the rules of the employment, the employe was free from the duties of [her] employment."  *Collins*, 512 A.2d at 1352; *see also Dzikowska*, 103 A. at 352.  The Majority's approach to this case turns a longstanding distinction that honors the letter and spirit of the Act

---

[3] In a footnote, the Majority responds to this dissent, stating that "[w]e are merely affirming what we instructed in *Henderson*: when faced with a matter implicating this doctrine, reference our precedent, but analyze each case on an individual basis."  Majority Opinion, slip op. at 12 n.8. This usage improperly simplifies *Henderson*'s analysis.  Our opinion there acknowledged that application of the personal comfort doctrine is a "case-by-case inquiry and that each matter will depend on its evidence," as well as the salutary goals of the Act.  269 A.3d at 1278, 1280. However, we did not then disregard decades of precedent distinguishing between breaks that are informal and purely devoted to personal comfort and those that are formal and autonomous, however long their duration.  Instead, we analyzed the facts there, which notably included undisputed evidence that the claimant's break was the former, rather than the latter.  *Id*. at 1278-80.  We then compared those facts to our precedent, applying the common law, and concluded that they fit within the cases applying the personal comfort doctrine, all of which entailed similarly informal breaks, rather than the cases denying application of the doctrine, all of which entailed formal breaks like that at issue here.  *Id*.  To view *Henderson* as supporting either an unbreakable distinction between the two kinds of breaks or a "continuum" of factors suggesting or refuting a break in the course of employment is to misinterpret how it approached the task of analyzing the doctrine and reached its outcome.

into a "continuum" lacking any true standards other than the views of the adjudicator.

Even keeping in mind the fact-specific nature of these inquiries and the salutary goals of the Act, the cases the Majority cites as "on the compensable end of the continuum" that it devises on Claimant's behalf all entailed breaks that were not formally authorized and occurred while the worker was still "on the clock." *See* Majority Op. at 11-12. The worker in *Dzikowska* was on a cigarette break with no indication that it was formal or that he was off the clock when he was killed. 103 A. at 352. In *Dixon*, the claimant did not have a set time for lunch but was permitted to order food from restaurants in the building lobby and return to her work area lunchroom while remaining available for work duties if needed. 764 A.2d at 638. In *Henderson*, the claimant testified that the breaks he took were informal and could even be taken without permission if a supervisor was not around. 269 A.3d at 1274. In *Starr Aviation v. Workers' Compensation Appeal Board (Colquitt)*, 155 A.3d 1156 (Pa. Cmwlth. 2017), the worker had been given permission during her shift, without evidence that she clocked out, to drive her airport work vehicle to an area on the airport grounds where she planned to meet her mother, who was bringing her food, cigarettes, money, and feminine hygiene products. *Id*. at 1158.

None of these cases entailed a formally authorized, and even mandatory unpaid break like that here, where Claimant testified that she "punched out" from the time clock and that it was "really up to [her] what activities [she] engaged in" during those break times. Reproduced Record (R.R.) at 72a-73a. In the context of the personal comfort doctrine, the longstanding distinction between formal unpaid breaks where the worker is at liberty and *ad hoc* breaks where the worker remains on the clock has never been based on the length of the break, has never been erased

or treated as a "continuum," and remains not just relevant, but dispositive of compensability in the absence of any other countervailing factual basis or legal theory. Because neither the law nor the facts in this case support a determination that the personal comfort doctrine applies here and renders Claimant's injury compensable, I dissent.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Covey joins in this Dissent.